## CIRCUIT COURT OF ALBEMARLE COUNTY

Tanya A. Bryan

    v.

Nationwide Mutual Ins. Co.

July 19, 2004

Case No. (Chancery) CH03-12972

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the Court on Defendant's Plea of the Statute of Limitations in opposition to Plaintiff's Bill of Complaint which requests a reformation of her insurance contract. On June 4, 2004, this Court granted Plaintiff's Motion to Strike Defendant's Demurrer based on its failure to adequately state the grounds on which the pleading was insufficient.[1] Defendant now asserts that Plaintiff's claim is barred by the applicable statute of limitations established under Va. Code § 8.01-246. For the reasons set forth below, the Court overrules Defendant's Plea of the Statute of Limitations, and, likewise, dismisses the Motion for Summary Judgment.[2]

---

[1] The demurrer claimed that the Bill of Complaint "fails to state a sufficient claim for 'reformation' of a contract." Though Defendant now argues in its Brief as to whether or not a cause of action for reformation exists, specifically on the issues of mutual mistake and failure to read the insurance contract, leave was granted by the Court to submit memoranda pertaining only to the issue of the statute of limitations.

[2] The Court finds that issues of material fact do exist in relation to the issue of mutual mistake; as to the issue of a duty to read an insurance policy, the Court finds that this matter is not being raised at the proper time. Moreover, a factual inquiry would need to be made before the Court found that Plaintiff breached such duty, even if that duty applies to her case.

■■■■■■■■

*Factual Background*

All facts alleged in Plaintiff's Bill of Complaint will be taken as true for purposes of determining whether the allegations are sufficient in overcoming a plea of the statute of limitations. In considering a plea of the statute of limitations, much like a demurrer, the Court must apply, "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991) (*quoting Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988)).

In 1993, Plaintiff, Tanya A. Bryan, met with an insurance agent in Alexandria, Virginia, and entered into an insurance contract with Defendant, Nationwide Mutual Insurance Company, whereby Plaintiff purchased insurance, Policy Number 53 Q 345265, which provided for, among other things, uninsured motorist coverage of $300,000 per person on her 1987 Nissan Maxima. In June 1996, Defendant cancelled that policy, which had become Policy Number 53 45 Q 345265 but still provided the same amount of uninsured motorist coverage, without reporting the cancellation to Plaintiff.

When Plaintiff discovered such cancellation in October 1996, she arranged an appointment with Jennie Park, f/k/a Jennie Mun, an agent of the Defendant insurance company, in order to reinstate the policy. During that meeting, the Plaintiff was informed that the policy could not be reinstated at that time, but, if Plaintiff returned after six months, the same policy could be rewritten. For this six month period, Plaintiff retained insurance from AIA Insurance of Virginia.

On April 1, 1997, Plaintiff returned to the Defendant's agency where she met with Ms. Park again to discuss reinstatement of Policy Number 53 45 Q 345265. Plaintiff expressed to Ms. Park that "she would like [her] old contract." Thereafter, Plaintiff was supplied with a declaration page from Policy Number 53 45 Q 345265, containing the same amount of uninsured motorist coverage, and asked if any changes had been made. Ms. Park's answer was that no changes had been made. Plaintiff never completed, reviewed, or signed an application for her new contract of insurance, Policy Number 53 45 Q 491584, nor did she review the declaration page for the different policy or the coverage limits contained in that policy. Both Plaintiff and Ms. Park believed the coverage limits for Policy Number 53 45 Q 345265 to be the same for Policy Number 53 45 Q 491584. In actuality, Policy Number 53 45 Q 491584 only provided for uninsured motorist coverage of $100,000 per person.

On June 7, 1999, Plaintiff suffered injuries as a result of her involvement in an automobile accident in Fairfax County, Virginia. The Circuit Court for the County of Fairfax found the tortfeasor liable to Plaintiff for damages in the amount of $292,000 with 9% interest on April 10, 2002. Plaintiff only received $25,000 from the tortfeasor's insurance company on account of the limits of the liability coverage available from the tortfeasor's automobile coverage. This payment was made on April 11, 2002. Thereafter, the tortfeasor filed for and was discharged from bankruptcy. Defendant Nationwide made a payment of $75,000 to Plaintiff on April 12, 2002. This payment was made pursuant to the terms of Policy Number 53 45 Q 491584, specifically the $100,000 uninsured motorist coverage limit.[3]

It was not until January 27, 2003, that Plaintiff discovered the mistake in drafting Policy Number 53 45 Q 491584, specifically the policy's omission of $300,000 uninsured motorist coverage. Pursuant to this discovery, Plaintiff contacted the agency where she purchased the new coverage. Thereafter, the agency informed her that they had made a mistake in writing the policy to include only $100,000 because that amount was set as the default limit on the agency's computer at that time. After bringing this mistake to Defendant Nationwide's attention, Plaintiff stated that she would be willing to compensate the difference in the amount of premiums between her policy and what her policy was intended to be. Defendant contends that it is unwilling to modify the policy. Plaintiff now petitions the Court in Chancery to reform Policy Number 53 45 Q 491584 to contain the intended terms set forth in Policy Number 53 45 Q 345265, including the uninsured motorist coverage of $300,000. Plaintiff also seeks specific enforcement of the reformed policy against Defendant Nationwide, which would require it to pay the remaining judgment, $192,000 plus 9% interest from April 10, 2002, less any credit owed to Nationwide for uncollected premiums resulting from the difference in the two policies.

## Discussion of Authority

Defendant asserts that Virginia Code § 8.01-246 bars Plaintiff's claim because the insurance contract was entered into on April 1, 1997, and Plaintiff did not seek to reform the contract until November 25, 2003. The relevant portion of the Code states that "in actions on any contract which is not otherwise specified and which is in writing and signed by the party to be

---

[3] Defendant's Brief in Support of Motion for Summary Judgment incorrectly states that Plaintiff seeks $75,000. Moreover, the Brief claims that Defendant already paid $100,000 in connection with the automobile accident and that the total amount due Plaintiff under the suit was only $175,000.

charged thereby, or by his agent, within five years whether such writing be under seal or not." Va. Code § 8.01-246. The thrust of Defendant's argument centers on the point that, though Plaintiff's suit be in equity, the statute of limitations should apply as it would in a suit on a contract in law. This argument is without merit.

Defendant cites *Belcher v. Kirkwood*, 238 Va. 430, 383 S.E.2d 729 (1989), as authority which would render Plaintiff's claim time-barred: "if a legal demand be asserted in equity which at law is barred by the statute, it is equally barred in equity." *Id.* at 433 (*citing Sanford v. Sims*, 192 Va. 644, 649, 66 S.E.2d 495 (1951) (emphasis omitted)). The relevant issue decided in *Belcher* concerned a claim for unjust enrichment based on an oral contract, originally filed as an action at law, and did not mention the applicability of the statute of limitations to an action in equity to reform a written contract based on mutual mistake. At no time was this action, here instituted by Plaintiff, filed as an action at law, nor could it be perceived as having any connection to an action at law.[4] Reformation of a contract is a device founded solely in equity. See *Wilkerson v. Dorsey*, 112 Va. 859 (1911); *Bankers Fire Ins. Co. v. Henderson*, 196 Va. 195, 83 S.E.2d 424 (1954); *Gibbs v. Price*, 207 Va. 448, 150 S.E.2d 551 (1966); *Ayers v. Mosby*, 256 Va. 228, 504 S.E.2d 845 (1998).

The Court finds that the proper doctrine which would act as a bar to reformation of a contract is laches because of its equitable nature.

Relief may be denied because of laches, for a party having a just claim to invoke the jurisdiction of a court upon equitable grounds must exercise reasonable diligence in the assertion of his demand. If by laches injustice may be done, the court declines to interfere. This principle is justly applied as well to initial pleadings to reform a contract on the ground of mistake as to other cases.

16 M.J., *Rescission, Cancellation, and Reformation*, § 29. The injustice which results from a passage of time is the essential element. Laches is sustainable only on proof of both of two elements: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. See *Mogavero v. McLucas*, 543 F.2d 1081 (4th Cir. 1976); see also *Strickland v. Ayers*, 159 Va. 311, 165 S.E. 387 (1932) (holding that it is not mere lapse of time, but a change of situation during neglectful repose which renders it inequitable to afford relief). The general definition regarding the doctrine is prevalent throughout Virginia law: "the party asserting the defense of laches must show the prejudice resulting from the delay,

---

[4] Furthermore, Defendant claims that the "law cause of action for the petitioner to recoup" the additional uninsured motorist coverage remains unclear, and that Plaintiff's use of equity is a subterfuge. Clearly, this Court has the power not only to reform a contract through equity but also order specific performance of it as reformed. See *Temple v. Virginia Auto. Mut. Ins. Co.*, 181 Va. 561 (1943).

otherwise the essential basis for the application of the doctrine of laches is nonexistent." 7A M.J., *Equity*, § 32. Thus, without further alleging that Plaintiff's delay caused prejudice to the Defendant by way of death of parties, loss of evidence, disadvantage in establishing a claimed right or defense, or a detrimental change of position by Defendant, the doctrine of laches will not apply. As such, Plaintiff's action in equity for reformation is not time-barred.

## *Ruling*

After reviewing the facts as pleaded, the Court is unable to discover any circumstance that would render it inequitable to allow Plaintiff to proceed with her action for reformation, other than a mere passage of time. Based on these findings, Defendant's plea of the statute of limitations is overruled.